**CARUSO v. FIDELITY & DEPOSIT CO. OF MARYLAND.**

No. 17473.

Court of Appeal of Louisiana. Orleans.

Jan. 13, 1941.

Rehearing Denied Feb. 10, 1941.

P. M. Milner, of New Orleans, for appellant.

O'Keefe & Davison, of New Orleans (A. J. O'Keefe, Jr., of New Orleans, of counsel), for appellee.

McCALEB, Judge.

The plaintiff, Vincenzo Caruso, filed this suit against the defendant, Fidelity & Deposit Company of Maryland, the surety of the statutory bond furnished by F. D. Charbonnet, Jr., a notary public for the Parish of Orleans, claiming that it is liable to him for the damages which he has allegedly sustained as a result of certain fraudulent and wrongful acts committed by Charbonnet in pursuance of his official duties as a notary public.

The pertinent allegations of plaintiff's petition are, in substance, as follows: That, on December 17, 1928, he purchased from one N. A. Fryer, by act passed by Charles V. Macaluso, notary public in and for the Parish of Orleans, a certain parcel of real estate situated in the City of New Orleans, bearing municipal number 1207 Clouet Street, in consideration of a cash payment by him to the vendor of the sum of $1,485; that Fryer warranted to him that the title to the property conveyed was clear and marketable and free from any encumbrances whatever; that, prior to the passage of the act of sale, the notary Macaluso had obtained in the name of N. A. Fryer, all necessary and proper certificates, including the mortgage certificate of the Recorder of Mortgages for the Parish of Orleans and

that, on the mortgage certificate, it appeared that there were two outstanding mortgages encumbering the real estate, viz.:

"1. Mortgage in favor of Raymond Gauche for the sum of $3,000.00, as per act before Francis D. Charbonnet, Jr., Notary Public, dated January 17, 1927, recorded in M.O.B. 1354, Folio 355.

"2. Mortgage in favor of Dewitt E. Charbonnet for the sum of $1,000.00, as per act before Francis D. Charbonnet, Jr., Notary Public, dated January 28th, 1927, recorded in M.O.B. 1364, Folio 402."

Plaintiff avers that the two above-described mortgages were cancelled from the mortgage certificate in the following manner: That Charles V. Macaluso (the notary who passed the act of sale from Fryer to plaintiff) obtained from F. D. Charbonnet, Jr., a full and genuine release of the $1,000 second mortgage on the property and a partial release of the $3,000 first mortgage; that, while the cancellation of the second mortgage for $1,000 was valid, the partial cancellation of the first mortgage was ·fraudulent because neither Charbonnet nor his Secretary, one Eloise Bennot, who appeared before him as the holder and owner of the $3,000 mortgage note in the act of partial release he executed as notary, was the owner thereof and that he nevertheless passed the spurious act of partial release when he knew that the mortgage note belonged to one Henry Zimmer and Mrs. John W. Hite. He further avers that Charbonnet told Macaluso that he was the lawful owner of the $3,000 mortgage note and that, after the act of partial release was passed and the Recorder of Mortgages, acting upon the faith of that document, had cancelled the inscription of the $3,000 mortgage as well as the $1,000 mortgage from the certificate which had been obtained in the name of Fryer, Macaluso, being under the belief that the acts of partial and complete release were legal, paid $1,000 to Charbonnet as a notary public in consideration for the cancellation of the inscription of the mortgages.

Plaintiff further alleges that, after the execution of the act of sale from Fryer, he took possession of the property purchased by him, paid city and state taxes thereon and made extensive repairs ·to the building; that, after he had been in possession of the premises for some time, Zimmer and Mrs. Hite, the lawful owners of the $3,000 mortgage note, filed foreclosure proceedings in the Civil District Court for

534

the Parish of Orleans in the proceedings entitled "Henry L. Zimmer et al. v. Newstar August Fryer et al." No. 211,226 of the Docket of the Court, alleging that the cancellation of the mortgage by F. D. Charbonnet, Jr., Notary Public, was fraudulent; that he was made a party to said foreclosure proceedings; that he defended the suit; that, after due proceedings, the contentions of Zimmer and Mrs. Hite were upheld by the Supreme Court; that the act of partial cancellation by Charbonnet was declared to be fraudulent and that the plaintiffs in the foreclosure proceedings were decreed to be entitled to obtain the relief prayed for by having the property seized and sold in satisfaction of their claim. He asserts that, when the judgment of the Supreme Court became final, the property which he had acquired from Fryer was sold at judicial sale by the civil sheriff; that Zimmer and Mrs. Hite, the holders of the mortgage note, purchased the said property at the sheriff's sale in satisfaction of their claim against it and that he was thereby divested of all of his right, title and interest in and to the real estate.

He further avers that, in view of the fact that he had spent considerable money in repairing the property and in the payment of the city and state taxes thereon over a number of years, he felt that it was necessary, in order to minimize his damage and to protect his interest in the property, to purchase the real estate from Zimmer and Mrs. Hite, the adjudicatees at the sheriff's sale; that, accordingly, on November 9, 1938, he bought the property from Zimmer and Mrs. Hite for $1,800; that, shortly afterwards, he instituted suit in the civil district court against his vendor, N. A. Fryer, and F. D. Charbonnet, Jr., to recover from them the amount of his damage, to wit, $1,829; that, in the proceedings entitled "Vincenzo Caruso v. Francis D. Charbonnet and Newstar August Fryer", No. 228,746 of the docket of the civil district court, he obtained a judgment against the defendants in solido; that he thereafter caused a writ of fieri facias to be issued directed against both defendants in that proceeding and that said writ of fieri facias was returned "nulla bona" by the civil sheriff.

Plaintiff alleges that his damage has been sustained as a direct consequence of the unlawful and fraudulent notarial act of partial release executed by F. D. Charbonnet, Jr.; that the said Charbonnet had

executed on June 12, 1926, a notarial bond in the sum of $10,000 inuring to the benefit of the public, with the defendant, Fidelity & Deposit Company of Maryland, as surety thereon, conditioned as the law directs for the faithful performance and discharge of his duties as a notary public; that, in view of the wrongful and unfaithful acts of the said Charbonnet, the defendant surety is liable to him and that judgment should be granted in his favor for the amount of his damages which he fixes at the sum of $1,862.95.

To plaintiff's petition, the defendant appeared and filed (1) an exception of no right or cause of action and (2) an exception of prescription of ten years. And in support of the exception of no right or cause of action, the defendant offered in evidence, to be considered in connection therewith, a certified copy of the act of sale from Fryer to the plaintiff. After hearing argument on the exceptions, the trial judge overruled them and the defendant in due course filed its answer with full reservation of its rights. In its answer, the defendant admitted that it is the surety on Charbonnet's notarial bond and that the bond was in full force and effect at the time Charbonnet executed the fraudulent partial release of the $3,000 mortgage. It denied, however, any and all responsibility to the plaintiff for the wrongful acts of Charbonnet, averring that the plaintiff never at any time employed Charbonnet to pass any act or acts as a notary public; that plaintiff had paid cash for the property and that his only cause of action, if any, was against his vendor, N. A. Fryer, for the latter's failure to deliver to him a merchantable title free from any encumbrance whatever.

After a trial of the case on these issues, there was judgment in favor of the plaintiff for the damages prayed for. Defendant has prosecuted this appeal from the adverse decision.

In this court, counsel for the defendant has insisted upon the validity of his exception of no right or cause of action and he claims that the judge of the district court erred in overruling it because there is no allegation contained in plaintiff's petition to show that he paid out any money whatever upon the faith of the fraudulent act of partial release executed by F. D. Charbonnet, Jr., notary public.

We think that the exception is well founded. The plaintiff's cause of action is based upon the theory that the damages

which he has sustained are directly due to the fraudulent act of partial release executed by the notary Charbonnet but nowhere in his pleading is there any allegation of fact to show that he parted with the purchase price which he paid to Fryer upon his faith in the genuineness of that notarial act. On the contrary, his petition, when considered in connection with the act of sale through which he originally acquired the real estate, discloses as follows: · That he purchased the property from Fryer by cash sale before Macaluso, notary public, for the sum of $1,485, which amount was paid by him to Fryer upon the faith of the latter's warranty that he would deliver to him a clear title, free from any encumbrances whatever. It further appears that, at the time the sale was consummated, there were two mortgages bearing against the property—one for $3,000 and another for $1,000. In the act of sale, it is stated that these mortgages would be cancelled by act to be subsequently passed before F. D. Charbonnet, Jr., notary public, but there is no recital either in the petition or in the act of sale that the plaintiff himself or the notary who passed the act would retain any part of the purchase price for the purpose of paying off the outstanding encumbrances. On the contrary, according to the act of sale, the entire purchase price was delivered to the vendor Fryer.

It is true that the plaintiff alleges that Macaluso, the notary, obtained from Charbonnet a full release of the $1,000 mortgage and a partial release of the $3,000 mortgage. But, there is no allegation in the petition as to whether Macaluso, in obtaining the release from Charbonnet, was acting for Fryer the vendor or for plaintiff the purchaser. Under such circumstances, we are bound to presume that, since the act of sale recites that the purchase price was paid to Fryer, plaintiff was satisfied with the title and that he relied entirely upon Fryer, his vendor, to comply with his warranty to convey a clear and marketable title and see to it that the mortgages were properly cancelled and erased.

Then, too, it must be borne in mind that, whereas the price paid by plaintiff was $1,485, the mortgages outstanding against the property amounted to $4,000. There is no averment contained in the petition, nor is there any recital in the act of sale, to show what portion of the purchase price was to be used for the purpose of having the outstanding mortgages released. There

is an allegation to the effect that Macaluso, the notary who passed the sale, paid Charbonnet $1,000 and that Charbonnet executed a full release of the $1,000 mortgage and a partial release of the $3,000 mortgage. But we are not informed as to whether Macaluso received that sum from Fryer or from the plaintiff or as to whether Charbonnet had agreed to accept that sum as payment in full for the cancellation of both of the outstanding mortgages.

It is the well-settled law of this State that a surety on a notary's bond is responsible to all persons who have been defrauded of their money as a consequence of their reliance upon the genuineness of any document executed by the notary while in the performance of his official duties. See Lacour v. National Surety Co., 147 La. 586, 85 So. 600, 18 A.L.R. 1295, and cases there cited. But, in order for a party who claims injury to recover, he must allege and prove that he parted with his money upon his faith in the authenticity of the notarial act or upon the belief that the notary would perform the duties required of him by law. In the case at bar, there is no averment of fact contained in the petition exhibiting that the plaintiff parted with anything on the faith of the act passed by Charbonnet. Conversely, the petition, viewed in connection with the recitals of the act of sale, reveals that the plaintiff purchased a piece of property with two outstanding mortgages thereon, paid the purchase price in full to his vendor and that he was apparently depending upon the latter to attend to the cancellation of the mortgages. Under such circumstances, it cannot be said that, when he parted with his money, he was relying upon the act of release which was to be subsequently passed by Charbonnet and that he gave the purchase price on the faith of that release.

Of course, the situation might be different if the plaintiff had alleged that, whereas the act of sale recites that the entire purchase price of the property was paid to Fryer, yet, in truth and in fact, the price, or a portion thereof, was retained by plaintiff to be used by him to have the outstanding mortgages cancelled or that he delivered the money to the notary Macaluso whom he appointed as his agent to attend to such cancellation and erasure. Under such averments, it would follow that, if either the plaintiff or Macaluso, acting for plaintiff, paid the money to Charbonnet on the faith of the partial release executed by

him, plaintiff would be entitled to recover from Charbonnet's bondsman on the ground that he was induced to part with his funds as a direct result of Charbonnet's fraud and misconduct as a notary in passing a spurious· act. However, no such case is disclosed by plaintiff in his petition.

■■ While we are of the opinion that the facts alleged by plaintiff are inadequate to sustain a cause of action, it does not follow that his case should be finally dismissed for that reason. It is now well established that a petition which does not allege a cause of action because of insufficiency of allegations should not be dismissed absolutely but that the plaintiff should be permitted to supplement his averments by amendment. See Reeves v. Globe Indemnity Co., 185 La. 42, 168 So. 488. Under the circumstances of this case, we think that plaintiff should be given an opportunity to supply the deficiency in his pleadings—for, if he is able to allege as a fact that, in spite of the recitals of the act of sale, the purchase price was not delivered by him to Fryer but was withheld by the notary Macaluso with instructions from plaintiff to have Charbonnet cancel both of the outstanding mortgages; that Charbonnet executed a fraudulent partial release and that Macaluso, relying upon the genuineness of that release, paid over plaintiff's money, then a cause of action against the defendant bonding company will be stated. See Lacour v. National Surety Company, supra.

In view of our conclusion that the· exception of no cause of action is well taken, it is unnecessary for us to consider the other defenses interposed by the defendant bonding company as these defenses may be fully considered in the event the plaintiff is able to amend his pleadings by setting forth a case cognizable in law.

For the reasons assigned, the judgment appealed from is reversed, the exception of no cause of action of the defendant, Fidelity & Deposit Company of Maryland, is maintained and it is now ordered that the case be and it is remanded to the Civil District Court for the Parish of Orleans for the purpose of permitting the plaintiff to amend his petition and for further proceedings according to law and not inconsistent with the views herein expressed. The plaintiff, Vincenzo Caruso, to pay the costs of this appeal, all other costs to await the final determination of the cause.

Reversed and remanded.